UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x    **HEARING DATE:**
                                                                  **9/17/2009 @ 2:00 P.M.**

In re:                                                        :   Chapter 11

                                                              :   Case No. 08-13153 (SMB)
RIDGEMOUR MEYER PROPERTIES, LLC,                              :

Debtor.                                                       :

-------------------------------------------------------------x

## RESPONSE OF PLAN PROPONENTS
## TO OBJECTION OF GOETZ FITZPATRICK LLP
## TO CONFIRMATION OF PLAN OF REORGANIZATION

**TO:    THE HONORABLE STUART M. BERNSTEIN,
        CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The Response of William A. Meyer ("Meyer"), A.J. Rotonde ("Rotonde"), Ridgemour Development Corp. ("RDC"), W & A Development, LLC, ("W & A"), (together, the "Plan Proponents"), by their attorneys, Rattet, Pasternak & Gordon Oliver, LLP, to the Limited Objection, (the "Goetz Objection") of unsecured creditor Goetz Fitzpatrick, LLP ("Goetz Fitzpatrick"), to Confirmation of the Fourth Amended Plan of Reorganization (the "Plan") respectfully represents and sets forth as follows:

1.    This Response is respectfully submitted in response to the Limited Objection of Goetz to the confirmation of the Plan, and in Objection to Goetz Fitzpatrick's unsecured claim.

2.    The Plan should be confirmed for the reason that it provides for the full payment of all allowed claims, with interest. The Plan settles contentious litigation that has prevented development of a significant part of downtown White Plains, and for that

1

reason alone unique circumstances justifying Plan releases of non-Debtor parties are present. Further the provisions granting releases (the "Exculpation Provisions") are important to the confirmation of the Plan. In addition, the rights which Goetz Fitzpatrick would be prevented from asserting are insubstantial, and thus equity militates in favor of overruling the Objection.

### THERE ARE UNIQUE CIRCUMSTANCES JUSTIFYING THE GRANTING OF PLAN RELEASES

3.    The Goetz Objection addresses itself to the releases of the funders of the Plan (the "Plan Funders") and the Plan Proponents.

4.    Nondebtor releases as part of a plan are authorized by the Bankruptcy Code. See, e.g. In re Drexel Burnham Lambert Group, Inc. 960 F.2d 285 (2d Cir. 1992); In re Metromedia Fiber Network, Inc. 416 F.3d 136 (2d Cir. 2005); In re Karta Corp., 342 B.R. 45 (Bankr.S.D.N.Y. 2006).

5.    The Second Circuit issued its Metromedia decision, clarifying the standards for the granting of relief with regard to continuing litigation to non-Debtor parties. In Metromedia, the Court specifically referenced and reinforced its earlier decision in In re Drexel Burnham Lambert Group, Inc. 960 F.2d 285 (2d Cir. 1992) where it had stated in pertinent part:

> In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan. See In re: A.H. Robins Co., 880 F.2d 694, 701 (4th Cir.), cert. denied, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). The Settlement Agreement is unquestionably an essential element of Drexel's ultimate reorganization. In re Drexel Burnham Lambert Group, Inc. 960 F.2d 285, 293 (2d Cir. 1992).

Thus, injunctions against creditors pursuing non-debtor parties have long been part and parcel of the reorganization process.

The Metromedia court stated:

> We have previously held that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 293 (2d Cir.1992). While none of our cases explains when a nondebtor release is "important" to a debtor's plan, it is clear that such a release is proper only in rare cases. See, e.g., Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 657-58 (6th Cir.2002) ( "[S]uch an injunction is a dramatic measure to be used cautiously ...."); Gillman v. Cont'l Airlines (In re Cont'l Airlines ), 203 F.3d 203, 212-13 (3d Cir.2000) (recognizing that nondebtor releases have been approved only in "extraordinary cases").
>
> ******
>
> Courts have approved nondebtor releases when: the estate received substantial consideration, e.g., Drexel Burnham, 960 F.2d at 293; the enjoined claims were "channeled" to a settlement fund rather than extinguished, MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir.1988); Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir.1989); the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," id.; and the plan otherwise provided for the full payment of the enjoined claims, id. Nondebtor releases may also be tolerated if the affected creditors consent. See In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir.1993).
>
> But this is not a matter of factors and prongs. No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique. See Dow Corning, 280 F.3d at 658; accord Cont'l Airlines, 203 F.3d at 212-13 ("A central focus of these ... reorganizations was the global settlement of massive liabilities against the debtors and co-liable parties. Substantial financial contributions from non-debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible."); see also, e.g., Drexel Burnham, 960 F.2d at 288-93 (approving multi-billion dollar settlement of 850 securities claims against Drexel, involving $1.3 billion payment into fund by Michael Milken and other co-liable Drexel personnel). In re Metromedia Fiber Network, Inc.  416 F.3d 136 (2d Cir. 2005).

6.      The Court, in In re Karta Corp., 342 B.R. 45 (Bankr.S.D.N.Y. 2006)

stated:

> So the challenge for a court is to parse the facts of the case before it to see whether a significant non-debtor financial contribution plus other unusual factors render a situation so "unique" that non-debtor releases are appropriate.
>
> This is the rare case in which such factors exist-at least for releases of claims that relate to the carting and recycling business carried out by the Debtors and their affiliates.
>
> The three Debtor corporations and their affiliates are all part of a single, integrated, closely-held family business. The capital assets of that business, including land, leases, buildings and equipment, are owned by or leased to a number of separate family corporations or partnerships, all of which are owned by Pat and Ken Cartalemi or by Ken Cartalemi and members of his immediate family. All those assets- including the properties across the street from the main recycling facility, where the trucks are parked-are employed in the Cartalemi carting business.
>
> *******************
>
> That is the plan the parties have devised and the Bankruptcy Court has approved. By preserving the vitality of the Cartalemi recycling business, the Plan, which is funded to a large extent by Ken and Maria Cartalemi and Global Land, benefits KI as much as it benefits Debtors. To the extent that the Non-Debtor releases to which Pat objects protect Ken, Maria, KI, Global Land, and other Non-Debtors from suits related to their roles in effecting this reorganization Plan, they are sensibly related to the purpose of reorganizing the business of the Cartalemi enterprises. To the extent that Ken and the other Released Parties conditioned their substantial financial participation in the reorganization [FN2] on protection from lawsuits arising out of their bankruptcy-related activities, the releases were important to the Plan. And because of the unique character of the Cartalemi empire (with a different corporation or partnership owning different assets that are used to run a single integrated enterprise) and the unique circumstance that prevented the business' management from putting KI into bankruptcy, such releases (i.e., releases from lawsuits arising out of bankruptcy-related activities) are exactly the sort of releases that should be sanctioned under *Metromedia/ Drexel*.

In re Karta Corp., 342 B.R. 45, 56 (S.D.N.Y.,2006)

4

7.      The above-captioned case is strikingly similar to Karta, Id. The Debtor and GDC each contributed certain assets to a joint venture, Pinnacle. Pinnacle owned the Subject Property prior to its transfer to the Debtor. Disentangling the various property interests and restoring the status quo, prior to the eruption of litigation and arbitration between GDC and the Debtor was almost impossible. The Exculpation Provisions foster a Plan which allows the development of the assemblage. Without the Exculpation Provisions and the funding relating to them confirmation would be rendered highly problematical.

8.      Thus, non-debtor releases remain a vital part of the reorganization process, and the requisite "unique circumstances" exists.

9.      This case is unique in that the Plan will pave the way for the redevelopment of a substantial portion of downtown White Plains.

10.     The Subject Property[1] is occupied by an abandoned A & P Supermarket, and otherwise is partially vacant.

11.     Substantial funding is required to properly redevelop the Subject Property.

12.     Such redevelopment is utterly impossible without the resolution of the litigated disputes that have plagued the Subject Property since 2006.

13.     The Proponents' Plan thus allows and fosters such redevelopment, and could not be confirmed without the funding by Plan Proponents. Plan Proponents' contribution is making possible a distribution of 100% of allowed claims, plus interest. Indeed, Plan Proponents will be posting a bond to ensure that Goetz Fitzpatrick receives

---

[1] All capitalized terms not otherwise defined have the same meanings ascribed to them in the Plan and the Disclosure Statement.

5

full payment of its claim upon its being fixed by the Court following resolution of their Objection to it.

14. Without these contributions, it is clearly not possible for the Plan to be confirmed, inasmuch as the Debtors' estates are burdened by significant administrative, secured and priority claims.

15. Clearly, the Exculpation Provisions are in the best interests of these estates, and **are themselves** important to the Plan, and should be approved in conjunction with confirmation of the Plan.

## THE RIGHTS THAT ARE CANCELLED BY THE EXCULPATION PROVISIONS ARE INSUBSTANTIAL

16. New York General Obligations Law §15-108 (a), (b) and (c) provide as follows:

> (a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
>
> (b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
>
> (c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

17. Since the underlying lawsuit attached to the Goetz Objection by GDC

against Goetz and other parties is a tort suit (as annexed to the Goetz Objection), there is no right of contribution among them. Further, the Goetz Objection references without specificity potential "claims" against the Plan Proponents (Goetz Objection, ¶ 14) and accuses them of "seek[ing] to insulate themselves" (*Id*. at ¶ 15) from such unspecified claims. Other than its unsecured claim for legal fees, to which the Plan Proponents may object **Goetz Fitzpatrick has no conceivable claims against the Plan Proponents.** It was the Debtor's litigation counsel in the pre-Petition arbitration. Neither the Proponents nor the Debtor owed it no duty, contractual or otherwise, outside the scope of its retainer agreement.

18.    Further, GDC's claims against the remaining Defendants are reduced by the amount of consideration GDC is receiving under the Stipulation.

19.    However, under New York law, absent the Exculpation Provisions, liability for indemnification, as distinguished from contribution among joint tortfeasors, survives entry into and approval of a settlement agreement. The New York State Court of Appeals, in Rosado v. Proctor & Schwartz, Inc. 66 N.Y.2d 21, 23, 494 N.Y.S.2d 851, 853 (1985) stated:

> To place the issue before us in focus, it is useful to restate the important substantive distinctions between contribution and indemnity. Basically, in contribution the loss is distributed among tort-feasors, by requiring joint tort-feasors to pay a proportionate share of the loss to one who has discharged their joint liability, while in indemnity the party held legally liable shifts the entire loss to another ( *see, D'Ambrosio v. City of New York,* 55 N.Y.2d 454, 460-461, 450 N.Y.S.2d 149, 435 N.E.2d 366; *McDermott v. City of New York,* 50 N.Y.2d 211, 216-217, 428 N.Y.S.2d 643, 406 N.E.2d 460; *Rock v. Reed-Prentice Div.,* 39 N.Y.2d 34, 38-39, 382 N.Y.S.2d 720, 346 N.E.2d 520; *McFall v. Compagnie Mar. Belge [Lloyd Royal], S.A.,* 304 N.Y. 314, 327-328, 107 N.E.2d 463; Prosser and Keeton, Torts § 51, at 341 [5th ed.]; Siegel, N.Y. Prac. § 169). Contribution arises automatically when certain factors are present and does not require any

kind of agreement between or among the wrongdoers (Siegel, N.Y. Prac. § 169). Indemnity, on the other hand, arises out of a contract which may be express or may be implied in law "to prevent a result which is regarded as unjust or unsatisfactory" (Prosser and Keeton, *op. cit.,* at 341; *see, McFall v. Compagnie Mar. Belge [Lloyd Royal], S.A., supra,* at pp. 327-328, 107 N.E.2d 463; *Garrett v. Holiday Inns,* 86 A.D.2d 469, 450 N.Y.S.2d 619, *mod. on other grounds* 58 N.Y.2d 253, 460 N.Y.S.2d 774, 447 N.E.2d 717; *Tipaldi v. Riverside Mem. Chapel,* 273 App.Div. 414, 78 N.Y.S.2d 12, *affd.* 298 N.Y. 686, 82 N.E.2d 585; Restatement [Second] of Torts § 886B).

Implied indemnity is frequently employed in favor of one who is vicariously liable for the tort of another ( *see, e.g., Rogers v. Dorchester Assoc.,* 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403), but the principle is not so limited and has been invoked in other contexts as well ( *see, e.g., McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460, *supra; McFall v. Compagnie Mar. Belge [Lloyd Royal], S.A.,* 304 N.Y. 314, 107 N.E.2d 463, *supra; Garrett v. Holiday Inns, supra,* 86 A.D.2d at p. 471, 450 N.Y.S.2d 619; *Tipaldi v. Riverside Mem. Chapel, supra* ). Nonetheless, "an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them" ( *Garrett v. Holiday Inns, supra,* at p. 471, 450 N.Y.S.2d 619). Rosado v. Proctor & Schwartz, Inc. 66 N.Y.2d 21, 23, 494 N.Y.S.2d 851, 853 (N.Y.,1985)

20.   The Rosado, Id. Court stated further:

Inasmuch as an entire shifting of the loss to another would not act as a disincentive to settlement or necessitate an examination of relative degrees of fault, indemnification claims are not barred (*McDermott v. City of New York,* 50 N.Y.2d 211, 218-219, 428 N.Y.S.2d 643, 406 N.E.2d 460, *supra;* \*\*\*854 *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278). A party who has settled and seeks what it characterizes as indemnification thus must show that it may not be held responsible in any degree. Rosado v. Proctor & Schwartz, Inc. 66 N.Y.2d 21, \*24, 484 N.E.2d 1354, \*\*1356-1357, 494 N.Y.S.2d 851,\*\*853 - 854 (N.Y.,1985).

21.   Given the strong likelihood that Goetz Fitzpatrick will be absolved of any damage from the large payment being made by Plan Proponents to GDC, and the fact that Goetz Fitzpatrick has not set forth grounds under which it could conceivably shift its

8

entire liability to any of the released parties, Goetz Fitzpatrick would not be prejudiced by the Exculpation Provisions.

**WHEREFORE,** the Plan Proponents respectfully request that this Court issue an Order granting the relief sought herein, to wit, confirmation of the Plan, together with such other and further relief as is just and proper under the circumstances.

Dated:   Harrison, New York
         September 14, 2009

>Respectfully submitted,
>
>RATTET, PASTERNAK & GORDON OLIVER, LLP
>Attorneys for Plan Proponents
>550 Mamaroneck Avenue
>Harrison, New York 10528
>(914) 381-7400
>
>
>BY: _/s/ Robert L. Rattet_
>     Robert L. Rattet